[No. B088019. Second Dist., Div. Two. Oct. 23, 1995.]

MEG GARSTANG, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CALIFORNIA INSTITUTE OF TECHNOLOGY et al., Real Parties in
Interest.

**COUNSEL**

Hagenbaugh & Murphy, Alan R. Zuckerman and Julie M. DeRose for Petitioner.

No appearance for Respondent.

Morgan, Lewis & Bockius, Andrea Sheridan Ordin, Raymond R. Kepner, Richard C. Rybicki, Hahn & Hahn, William K. Henley, Laura V. Farber and Sandra A. Cooper for Real Parties in Interest.

Krivis, Passovoy & Spile, Jeffrey L. Krivis, Michael P. West, Vittal & Sternberg, J. Anthony Vittal, Schiff, Cohn & Staenberg and Joel P. Schiff as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

**NOTT, J.**—Meg Garstang has petitioned this court for an extraordinary writ of mandate directing the superior court to set aside its order denying her motion to compel further answers to deposition questions.

We are asked to decide whether communications disclosed during mediation sessions before an ombudsperson employed by a private educational institution are privileged. We conclude they are protected by the qualified privilege set forth in this state's Constitution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Garstang worked for the California Institute of Technology (Caltech). On April 1, 1994, she sued Caltech and three coworkers, Cathy Fontenette,

Kerry Etheridge and Christina Smith for slander and intentional infliction of emotional distress.[1]

According to the complaint, Garstang was hired in 1989 as a secretary and shortly thereafter was promoted to the position of assistant to Russell Giambelluca, a division administrator. In March 1992, she was again promoted. Following these promotions the individual defendants told third persons that Garstang had "traded sexual favors for job advancement." Caltech "approved, consented to and ratified" these false statements.

In 1992 and 1993, Helen Hasenfeld, Caltech's ombudsman, conducted a number of meetings in connection with the rumors being circulated. Ann Bussone, Caltech's director of human resources, Giambelluca, Fontenette and other Caltech employees, including David Stevenson, participated in the Hasenfeld meetings. Garstang believes that during one of the sessions an admission was made that she had been "treated unfairly." Unfortunately, the ombudsman was unable to resolve the situation and Garstang filed suit seeking general, special, and punitive damages.

In preparation for her lawsuit, Garstang deposed Etheridge, Fontenette and Stevenson and questioned them about the Hasenfeld meetings. The deponents were instructed by counsel not to answer on the basis that the statements were privileged because they were made before an ombudsperson.

Garstang moved to compel further responses to those questions regarding Hasenfeld and the deponents' conversations with her, pointing out that California does not recognize an ombudsman privilege.

Caltech and the individual defendants opposed the motion to compel arguing that because the communications were made during mediation proceedings they were privileged pursuant to Evidence Code[2] section 1152.5. It was also contended that the California constitutional right to privacy protected the communications.

In denying Garstang's motion, the superior court opined, "[w]ell, the policy of the law, of course, is to settle cases without having to take them through the entire court process. And I think if I were to disregard this privilege, this would hamper [the] process." This petition for writ of mandate followed.

---

[1]Caltech, Fontenette, Etheridge and Smith are the real parties in interest.
[2]All further statutory references are to the Evidence Code unless otherwise indicated.

## II. Discussion

### A. *Contentions*

██ Garstang contends the deponents were required to answer questions concerning statements made in Hasenfeld's presence because "there exists no ombudsman's privilege in California."

Real parties concur. They assert, however, that the communications are privileged because they occurred during a "mediation," and are, therefore, protected from discovery pursuant to section 1152.5. Alternatively, real parties contend that the communications are protected by the qualified privilege set forth in article I, section 1 of this state's Constitution.

### B. *Mediation Privilege*

Section 1152.5, as it read at the time of the Hasenfeld meetings, provided as follows:

"(a) Subject to the conditions and exceptions provided in this section, when persons agree to conduct and participate in a mediation for the purpose of compromising, settling, or resolving a dispute:

"(1) Evidence of anything said or of any admission made in the course of the mediation is not admissible in evidence, and disclosure of any such evidence shall not be compelled, in any civil action in which, pursuant to law, testimony can be compelled to be given.

"(2) Unless the document otherwise provides, no document prepared for the purpose of, or in the course of, or pursuant to, the mediation, or copy thereof, is admissible in evidence, and disclosure of any such document shall not be compelled, in any civil action in which, pursuant to law, testimony can be compelled to be given.

"(b) Subdivision (a) does not limit the admissibility of evidence if all persons who conducted or otherwise participated in the mediation consent to its disclosure.

"(c) This section does not apply unless, before the mediation begins, the persons who agree to conduct and participate in the mediation execute an agreement in writing that sets out the text of subdivisions (a) and (b) and states that the persons agree that this section shall apply to the mediation."

None of the parties participating in the Hasenfeld meetings executed the writing required by section 1152.5, subdivision (c). Thus, even if we assume

Hasenfeld was conducting a "mediation" as that term is used in section 1152.5 at the time she endeavored to resolve Garstang's workplace dispute, the mediation privilege is inapplicable.[3]

Our conclusion does not, however, render the communications discoverable. In our opinion, private institutions have a qualified privilege not to disclose communications made before an ombudsman in an attempt to mediate an employee dispute. That qualified privilege is based on California's constitutional right of privacy.

### C.  *Qualified Privilege*

■  In California there is no privilege to refuse to disclose any matter, or to refuse to produce any writing, object, or thing, unless the privilege is created by statute. (§ 911, subd. (b).) "[T]he privileges contained in the Evidence Code are *exclusive* and the courts are not free to create new privileges as a matter of judicial policy. [Citations.]" (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) California, of course, does not specifically recognize an ombudsman privilege. (§ 900 et seq.)

There is, however, a right of privacy set forth in article I, section 1 of this state's Constitution which states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*." (Italics added.) This "inalienable right" is a "fundamental interest" of our society, essential to those rights guaranteed under the federal Constitution. (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].)  ■  "The right to privacy is not absolute, but it may be abridged only when there is a compelling and opposing state interest. [Citations.]" (*Kahn* v. *Superior Court* (1987) 188 Cal.App.3d 752, 765 [233 Cal.Rptr. 662].)

One such compelling public need lies in facilitating the "ascertainment of truth" in connection with legal claims. (*In re Lifschutz* (1970) 2 Cal.3d 415, 425 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Kahn* v. *Superior Court, supra*, 188 Cal.App.3d at p. 765.)

In *Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516 [174 Cal.Rptr. 160], the court faced a similar conflict between the "compelling"

---

[3]Real parties note they invoked the mediation privilege in 1994—after section 1152.5 was amended to delete the requirement of a writing. They argue, therefore, that the 1994 rather than the 1993 version of the statute is to be applied. We disagree, since the "mediation" sessions in question occurred in 1993. It was then, if at all, that the mediation privilege arose.

state interest in discovery and the parties' "fundamental right" of privacy. In that case, a faculty member of Stanford's school of medicine sued the university and a coworker for, among other things, libel and "conspiracy to defame." (*Id.* at p. 523.) Prior to trial the plaintiff demanded to inspect and copy the personnel, tenure, and promotion files of the defendant coworker; all documents regarding his research; all documents compiled by university committees in their investigation of the plaintiff; and the personnel, tenure, and promotion files of the plaintiff himself. (*Id.* at p. 524.) The trial court allowed partial discovery. The board of trustees sought a writ of mandate which the Court of Appeal issued. The appellate court denied disclosure of the coworker's files on the ground that there was no "compelling state interest" in such disclosure. (*Id.* at pp. 526-527.) It also denied disclosure of the university committee files concerning the investigation of the plaintiff, on the ground that since those committees had found no misconduct on his part, those files bore no relevance to his lawsuit. (*Id.* at pp. 527-528.) The court did, however, allow the plaintiff to obtain his own personnel file, with the identities of contributors redacted. (*Id.* at p. 533.)

In reconciling the competing public values advanced by the parties, the *Board of Trustees* court set forth two important principles. The first is that "inquiry into one's private affairs will *not* be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered *might* lead to other, and relevant evidence." [Citation.] ' "When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information.' " [Citations.] [¶] And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must be then a 'careful balancing' of the 'compelling public need' for discovery against the fundamental right of privacy. [Citations.]" (*Board of Trustees* v. *Superior Court, supra,* 119 Cal.App.3d at p. 525.) The second principle is that where the communications were tendered under a guaranty of confidentiality, they are thus manifestly within the Constitution's protected area of privacy. (*Id.* at p. 527.)

In light of these principles we consider Garstang's request for disclosure of the communications made before Caltech's ombudsman. The participants in the ombudsman sessions were all Caltech employees. Two are named as defendants in this action. All of the participants discussed Garstang and the rumors she alleges were being circulated about her. If Garstang is denied an opportunity to depose these individuals as to what was said in the meetings with the ombudsman, her ability to ascertain the truth in connection with her lawsuit may be impaired. We are of the opinion, however, that a proper balancing of the competing values would here

necessarily weigh in favor of the right of privacy of those individuals participating in the ombudsman sessions since the communications related to the private affairs of various Caltech employees, and were maintained in confidence by the institution.

In passing on a problem similar to ours, the court in *Kientzy* v. *McDonnell Douglas Corp.* (E.D.Mo. 1991) 133 F.R.D. 570, 572 (*Kientzy*) reached the same conclusion. There, an individual sought to depose the ombudsman before whom communications were made by fellow employees. The *Kientzy* court held that communications received during an informal mediation before an ombudsman were privileged because the communication was one made in the belief that it would not be disclosed, confidentiality was essential to the maintenance of the relationship between the parties, the relationship was one that society considers worthy of being fostered, and the injury to the relationship incurred by disclosure would be greater than the benefit gained in the correct disposal of litigation. (*Id.* at p. 571.)[4]

Evidence provided by Caltech shows that employees participating in informal mediations before its ombudsman do so in the belief that the communications will not be disclosed. Caltech gives to all employees a strict pledge of confidentiality and assurance that they may rely on the confidentiality, independence and impartiality of the "ombuds" office.[5] While Caltech has formal mechanisms for resolving harassment complaints, those members of the Caltech community who elect not to avail themselves of the institute's formal complaint and resolution procedures, may utilize the services of the "ombuds" office which was established in 1986 to "provide the Caltech community with confidential, informal assistance in resolving intra-campus conflicts, disputes and grievances; in promoting fair and equitable treatment within the Institute, and in fostering the general well-being of the Caltech community."

---

[4]The *Kientzy* case was decided in the federal system which, unlike California, permits the judicial creation of privileges. We find the *Kientzy* reasoning useful, however, in considering whether, and under what circumstances, a qualified privilege should be extended to communications made before an ombudsman.

[5]Caltech pledges within information distributed to its employees that "[t]he confidences and identities of the people who consult with us will not be passed on to anyone else without express permission to do so, except to the extent required by law."

Caltech also assures its employees that "[t]he Ombudsperson does not take sides, but considers the rights and interests of all parties involved in a dispute, with the aim of achieving a fair outcome. The Ombudsperson does not arbitrate, adjudicate, or participate in the formal grievance process."

Employees are also told that "[t]he Ombudsperson will take into consideration interests and concerns of all members of the Caltech community involved in a dispute. The Ombudsperson works toward resolutions of problems based on principles of fairness, without favoritism toward any group or individual. To ensure objectivity, the office is independent of all Institute structures, while reporting to the Provost's Office on administrative and budgetary matters only."

There is no question that confidentiality is essential to the maintenance of the relationship between Caltech's employees and management. As the *Kientzy* court noted, "[t]he function of [an] ombudsman's office is to receive communications and to remedy workplace problems, in a strictly confidential atmosphere. Without this confidentiality, the office would be just one more non-confidential opportunity for employees to air disputes. The ombudsman's office provides an opportunity for complete disclosure, without the specter of retaliation, that does not exist in the other available, non-confidential grievance and complaint procedures." (*Kientzy, supra*, 133 F.R.D. at p. 572.)

It is readily apparent that the relationship between the ombuds office and Caltech's employees and management is worthy of societal support. Caltech is a large university, with a diverse student body and work force. It is important that its students and employees have "an opportunity to make confidential statements and to receive confidential guidance, information, and aid to remedy workplace problems" to benefit themselves and their community. (*Kientzy, supra*, 133 F.R.D. at p. 572.) "This is true in spite of the possibility that such actions may be perceived by an employee to be against company or fellow employees' interests." (*Ibid.*)

It is also apparent that the harm caused by the disruption of the confidential relationship between the "ombuds" office and others in Garstang's case would be greater than the benefit to Garstang by disclosure. ■ "A successful ombudsman program resolves many problems informally and more quickly than other more formal procedures, including court actions." (*Kientzy, supra*, 133 F.R.D. at p. 572.) A court order that those participating in the sessions held by Hasenfeld disclose the information communicated in confidence would destroy the reputation and principle of confidentiality that the Caltech ombudsman program and office now enjoys and needs to perform its function. This is so because the utility of such a program and office "in resolving disputes in [the] workplace and thus diminishing the need for more formal resolution procedures, is founded on the confidentiality of its communications to and from company officials and employees." (*Ibid.*)

Given the valuable service an ombudsman provides, we are convinced of the propriety of affording constitutional protection to the privacy interests of individuals participating in an ombudsman program such as that established by Caltech. ■ Garstang contends, however, that under the facts of this case the qualified privilege should not apply because (1) she was "never made aware nor did she ever have an understanding that her meetings with Hasenfeld would be kept confidential;" (2) Hasenfeld did not keep her

pledge of confidentiality since she told at least one third person those things talked about in the ombudsman sessions she conducted; (3) Hasenfeld failed to bring "all of the parties together to reach any type of settlement or compromise;" and (4) Hasenfeld was not a neutral person because she is "employed by [Caltech] under their Human Resource umbrella and as such must look out for the best interests of [Caltech]."

The record reveals that every Caltech employee, including Garstang, was made aware of Hasenfeld's status as an ombudsperson, of Caltech's pledge of confidentiality, and that Caltech guaranteed the independence of the ombudsman office. Under these circumstances, and in the absence of evidence indicating that Caltech breached its confidentiality pledge and/or its guaranty that the ombudsman office would be independent, we must uphold the trial court's implied findings that Hasenfeld was acting in her capacity as an ombudsperson at the time she attempted to resolve Garstang's workplace dispute, that the individuals participating in the Hasenfeld meetings (including Garstang) did so believing their communications would not be disclosed, and that the ombudsman's office is independent of all Caltech structures.

Although not well articulated, it appears that Garstang also argues that an ombudsman is restricted in the manner in which he or she is entitled to proceed once approached with a workplace dispute. Garstang suggests that an ombudsman is required to conduct a group discussion, being careful to include those who are directly involved in the dispute, and any coworkers who may have information impacting upon the controversy, and at the conclusion of the meeting, the ombudsman is required to attempt to mediate a settlement.

Although the approach may differ from ombudsman to ombudsman, it seems obvious that before a dispute can be resolved an investigation of the facts is essential. It is only then that the nature of the controversy is revealed and the positions of the parties determined. ▮ Given the nature of workplace disputes, an ombudsman must be given the discretion to conduct a number of sessions—some of which may involve a single individual, and some of which may involve a number of individuals. At the conclusion of his or her investigation, the ombudsman must decide the likelihood of settlement. If he or she determines that resolution is unlikely the ombudsman sessions will be terminated. The decision to do so is strictly within the ombudsman's discretion, and will not be considered as evidence (in any lawsuit which may be filed) of whether a "true" mediation was being attempted.

▮ The record here discloses that Hasenfeld acted in conformity with the authority conferred upon an ombudsman, to wit, she discussed the

problem with various individuals in order to ascertain the facts, and to determine the positions of those involved in the dispute. All this she did in an attempt to resolve a workplace dispute. We conclude, therefore, that the qualified privilege applies.

### III.  DISPOSITION

The petition for writ of mandate is denied. The temporary stay issued February 2, 1995, is vacated.

Boren, P. J., and Fukuto, J., concurred.