[No. C054737. Third Dist. Sept. 5, 2007.]

OMBUDSMAN SERVICES OF NORTHERN CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF PLACER COUNTY, Respondent;
ANN COLEMAN et al., Real Parties in Interest.

**1238**

---

**COUNSEL**

Legal Services of Northern California, Brian Patrick Lawlor and Colin Andrew Bailey for Petitioner.

No appearance for Respondent.

Law Offices of David J. Bennion and David J. Bennion for Real Parties in Interest.

**OPINION**

**CANTIL-SAKAUYE, J.**—This writ proceeding challenges an order of the trial court requiring Ombudsman Services of Northern California (OSNC), an authorized representative of the Office of the State Long-Term Care Ombudsman and a nonparty to the underlying litigation, to provide the litigants with all of its records relating to a specific long-term care facility over a specified period of time. We conclude the trial court erred in requiring the production of such investigatory records, even with the redaction ordered by the court. We will grant OSNC's petition for extraordinary relief and issue a writ of mandate requiring the trial court to vacate the portion of its order requiring OSNC to provide any records beyond those regarding Lavern Staples made by Staples, his representatives, or family.

## BACKGROUND

Ann Coleman, as the legal representative of her late father Lavern Kenneth Staples's estate (plaintiff), sued Foothill Oaks Care Center, Horizon West, Inc., and Dr. William R. Nesbitt III (defendants) for elder abuse, wrongful death, unfair business practices, fraudulent business practices, and for fraud. Upon stipulation of plaintiff and defendants, a court order was issued requiring OSNC to "produce any and all records of complaints and actions taken pertaining to Foothill Oaks Care Center between May 20, 2005 and January 31, 2006." OSNC first received notice of the order when a copy was faxed to it by plaintiff a few days after entry of the order by the trial court. When OSNC could not get all parties to the litigation to stipulate to set aside the order, OSNC filed a motion in the trial court seeking to set aside the stipulated order based on lack of notice and requesting an affirmative protective order prohibiting the parties from conducting any further discovery of OSNC's privileged and confidential information.

OSNC asserted a protective order was necessary as its records were privileged and confidential under Welfare and Institutions Code sections 9715 and 9725, title 42 of United States Code section 3058d(a)(6)(C)(iii), Evidence Code section 1040, subdivision (b), and the California right to privacy contained in article I, section 1 of the California Constitution. OSNC disputed plaintiff's claim that the records should be disclosed based on plaintiff's authorization under Welfare and Institutions Code section 9725 (hereafter section 9725). According to OSNC, section 9725 only permits limited discovery of the personal information of a living individual patient or resident upon the authorization of that same patient or his/her legal representative. It did not extend to disclosure of any information regarding other people contained in OSNC's files. OSNC also argued there was no compelling necessity that warranted overriding the privilege and confidentiality of its records.

Plaintiff alone filed opposition to OSNC's motion. Plaintiff argued California does not recognize an ombudsman privilege, that the privileges contained in the Evidence Code are exclusive, and that the plain meaning of section 9725 provides for disclosure based on her authorization and upon the court order issued on stipulation of all parties to the underlying action. Plaintiff argued disclosure was consistent with the federal law cited by OSNC. Plaintiff contended the right to privacy under the California Constitution is conditional and could be sufficiently protected by obliteration of the names of confidential sources.

The trial court granted the motion by OSNC to set aside the stipulated order based on due process grounds, but granted only in part OSNC's motion for a protective order regarding the discovery sought by plaintiff. The trial court ordered OSNC to "provide all records about the decedent [Lavern Staples] made by the decedent or his representatives/family. The Ombudsman shall also provide all records pertaining to Foothill Oaks Care Center between May 20, 2005 and January 31, 2006, with the names of all persons involved redacted as well as any other private information that would reveal the identity of the long-term care resident/patient or his/her family or representatives." The trial court found "that redacting such information shall protect the interests in confidentiality."

██ OSNC filed a petition for writ of mandate and/or prohibition with this court seeking a peremptory writ directing the trial court to set aside and vacate the portion of its ruling and order requiring OSNC to provide all of its records pertaining to the Foothill Oaks Care Center for the specified time period. We issued an alternative writ of mandate and stayed all further discovery proceedings involving OSNC pending further order of this court. After this matter was fully briefed and oral argument scheduled, we received notice that the underlying litigation had settled. We requested and received supplemental letter briefs addressing the effect of such settlement. We conclude, due to the conditional nature of the settlement, the case is not moot. Moreover, the issues here involve an important matter of continuing public interest that is likely to recur. In such cases, we have discretion to retain jurisdiction and decide the merits. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279]; *Burch v. George* (1994) 7 Cal.4th 246, 253, fn. 4 [27 Cal.Rptr.2d 165, 866 P.2d 92]; *Californians for Fair Representation—No on 77 v. Superior Court* (2006) 138 Cal.App.4th 15, 22–23 [41 Cal.Rptr.3d 148]; *Glenfed Development Corp. v. Superior Court* (1997) 53 Cal.App.4th 1113, 1116, fn. 1 [62 Cal.Rptr.2d 195].) We now issue the peremptory writ requested.

## DISCUSSION

## I.

### Writ Relief Is Appropriate

█ "Although writ review of discovery rulings is generally disfavored, interlocutory review by writ is the only adequate remedy when, as here, a court compels the disclosure of documents or information that may be subject to a privilege, because 'once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure.' [Citation.]" (*Union Bank of California v. Superior Court* (2005) 130 Cal.App.4th 378, 388 [29 Cal.Rptr.3d 894]; accord, *Story v. Superior Court* (2003) 109 Cal.App.4th 1007, 1013–1014 [135 Cal.Rptr.2d 532]; see *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 330 [87 Cal.Rptr.2d 813].) Writ review is particularly appropriate here to protect the confidential records of third persons who are not parties to the underlying litigation below, who have had no notice of the ordered disclosure, and who, as a result, have had no opportunity to object. OSNC properly asserted the privacy rights of those third persons affected by the discovery order of the trial court. (*Doe 2 v. Superior Court* (2005) 132 Cal.App.4th 1504, 1520 [34 Cal.Rptr.3d 458]; *Denari v. Superior Court* (1989) 215 Cal.App.3d 1488, 1498–1499 [264 Cal.Rptr. 261]; Cal. Civil Discovery Practice (Cont.Ed.Bar 4th ed. 2006) § 3.156, pp. 234–235.)

We review discovery rulings under the abuse of discretion standard. (*Union Bank of California v. Superior Court, supra,* 130 Cal.App.4th at p. 388.) " 'Where there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court. [Citation.]' [Citation.] 'The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question.' [Citation.]" (*Ibid.*)

As we will discuss, we conclude writ relief is appropriate and necessary to correct the trial court's abuse of discretion in ordering disclosure of privileged and confidential OSNC records beyond OSNC's records about Lavern Staples made by Staples, his representatives or family.

## II.

### OSNC's Role As Ombudsman

To place our discussion in context, we begin with a discussion of OSNC's role as an authorized representative of the Office of the State Long-Term Care Ombudsman.

██ The federal Older Americans Act of 1965 (42 U.S.C. § 3001 et seq.) (the federal law) provides federal funding for states to carry out vulnerable elder rights protection activities. (42 U.S.C. § 3058.) To receive federal funding for such activities, states must comply with a variety of statutory requirements, including the establishment and operation of an Office of the State Long-Term Care Ombudsman. (42 U.S.C. § 3058g(a)(1).) Under the federal law, such state ombudsman may designate a local ombudsman entity to provide services to protect the health, safety, welfare and rights of long-term care residents and to ensure residents have regular and timely access to representatives of the ombudsman program and timely responses to complaints and requests for assistance. (42 U.S.C. § 3058g(a)(5)(B)(i), (ii).) The local ombudsman must "identify, investigate, and resolve complaints made by or on behalf of residents that relate to action, inaction, or decisions, that may adversely affect the health, safety, welfare, or rights of the residents." (42 U.S.C. § 3058g(a)(5)(B)(iii).) The duties of the local ombudsman also include representing the interests of residents before government agencies, as well as reviewing and commenting on, if necessary, any laws, regulations, government policies and actions pertaining to the rights and well-being of residents. (42 U.S.C. § 3058g(a)(5)(B)(iv), (v).)

California has established a long-term care ombudsman program to comply with the requirements of the federal law. (Welf. & Inst. Code, § 9700 et seq.) OSNC is a local ombudsman entity authorized by California's Office of the State Long-Term Care Ombudsman. Consistent with state law (Welf. & Inst. Code, § 9720), OSNC considers its principal role to be the investigation, resolution, and reporting of complaints made by any person alleging abuse, neglect or mistreatment of patients or residents in long-term care facilities. In conducting such investigations, OSNC assures all prospective witnesses that the information they provide is confidential and will not be made public or released to the patient, the facility or other witnesses except as ordered by a court. Such guarantee of confidentiality is critical to the functioning of the ombudsman as patients, family members, employees of the facility or other third parties may otherwise be hesitant to report alleged abuse or neglect. OSNC conducts over 4,000 investigations annually. According to OSNC, almost everything in the records of its investigations is highly personal in nature, including "patient diagnoses, prognoses, medications, patient and family social histories, other personal and intimate family details, social security numbers, [M]edicare numbers, and so on." Disclosure of such information would aggravate the widely recognized risks of patient, family, employee and witness exploitation and retaliation. OSNC claims the broad discovery authorized by the trial court in this case jeopardizes the continued effectiveness of its investigations and the program.

## III.

## The Records of OSNC Are Statutorily Privileged

Evidence Code section 911 provides that "[e]xcept as otherwise provided by statute: [¶] (a) No person has a privilege to refuse to be a witness. [¶] (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing. [¶] (c) No person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any writing, object, or other thing."

■ "In section 911 of the Evidence Code, the Legislature clearly intended to abolish common law privileges and to keep the courts from creating new nonstatutory privileges as a matter of judicial policy." (*Welfare Rights Organization v. Crisan* (1983) 33 Cal.3d 766, 768–769 [190 Cal.Rptr. 919, 661 P.2d 1073]; see *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) "Thus, unless a privilege is expressly or impliedly based on statute, its existence may be found only if required by constitutional principles, state or federal." (*Welfare Rights Organization v. Crisan, supra*, at p. 769.) The source of recognized statutory privileges, however, is not limited to those enumerated in the Evidence Code. (Evid. Code, §§ 230, 920; *Union Bank of California v. Superior Court, supra*, 130 Cal.App.4th at pp. 388–389.)

■ While there is no general "ombudsman" statutory privilege in California (*Garstang v. Superior Court* (1995) 39 Cal.App.4th 526, 532 [46 Cal.Rptr.2d 84] (*Garstang*)), there is a specific statute providing a privilege for the investigatory records and files of the office of the long-term care ombudsman (§ 9725).[1]

Section 9725 provides: "All records and files of the office relating to any complaint or investigation made pursuant to this chapter and the identities of complainants, witnesses, patients, or residents shall remain confidential,

---

[1] OSNC identifies Welfare and Institutions Code section 9715 (section 9715) as the principal statutory source of privilege applicable here. Actually, section 9715 does not make all communications "with" a representative of the ombudsman office privileged, as OSNC claims. It makes "[a]ll communications *by* a representative of the office, if reasonably related to the requirements of that individual's responsibilities under this chapter and done in good faith" privileged. (§ 9715, subd. (c), italics added.) Section 9715 does not provide that a court may order disclosure of confidential information only if necessary to enforce the provisions of this chapter. Section 9715 provides "[a]ny representative of the office shall be exempt from being required to testify in court as to any confidential matters*, except as the court may deem necessary to enforce the provisions of this chapter." (§ 9715, subd. (d), italics added.) Although section 9715 provides additional support for OSNC's claim of privilege, we find section 9725 to be the statute more on point.

unless disclosure is authorized by the patient or resident or his or her conservator of the person or legal representative, required by court order, or release of the information is to a law enforcement agency, public protective service agency, licensing or certification agency in a manner consistent with federal laws and regulations."

Section 9725 clearly provides a statutory privilege against disclosure of any complaint made to OSNC and all investigatory records and files of OSNC. The question in this case becomes the interpretation of the exceptions outlined in the last half of section 9725.

## IV.

### The Consent Exception in Section 9725

█ Section 9725 provides broad confidentiality to OSNC's investigatory records and files, "unless disclosure is authorized by the patient or resident or his or her conservator of the person or legal representative." Plaintiff argues disclosure of the records she requested is allowed under the plain meaning of this language because she is the legal representative of her father, who was a patient/resident of Foothill Oaks Care Center.[2]

█ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420]; accord, *Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].) In determining this intent, we begin with the words of the statute, giving them their usual and ordinary meaning. (*Nolan v. City of Anaheim, supra*, at p. 340.) "But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.'" (*People v. Pieters, supra*, at p. 898, quoting *Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) Legislation should be given a reasonable, commonsense construction consistent with the apparent purpose of the Legislature (*RRLH, Inc. v. Saddleback Valley Unified School Dist.* (1990) 222 Cal.App.3d 1602, 1609 [272 Cal.Rptr. 529]), considering the statute as a whole and harmonizing all parts in the context of the entire statutory framework (*Barratt American,*

---

[2] OSNC argued below, and mentions again in its petition for writ of mandate and/or prohibition, that the consent exception in section 9725 is limited to only *living* patients or residents and their legal representatives. We conclude it is unnecessary under the circumstances of this case to decide whether this is true, as we conclude the consent exception, even if it applies to plaintiff after the death of her father, does not allow disclosure of any records of third persons.

*Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 699 [37 Cal.Rptr.3d 149, 124 P.3d 719]; *People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]), including related state and federal statutes on the same subject. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778 [38 Cal.Rptr.2d 699, 889 P.2d 1019]; 2B Singer, Sutherland Statutes and Statutory Construction (6th ed. 2000) § 51:06, pp. 264–266.)

The language of section 9725 starts with the premise of confidentiality covering all long-term care ombudsman investigatory records, files and the identities of persons communicating with the ombudsman. This clearly promotes the important purpose of the legislation in providing for the investigation of complaints and reports of possible abuse, neglect and mis-treatment of elderly patients and residents by an independent ombudsman. The ombudsman is likely to get the full cooperation of such patients, residents, employees or administrators of the facility, medical personnel, and other third persons only if such people are assured their statements and information will not come back to haunt them. The confidentiality provision in section 9725 is consistent with, and apparently enacted to meet, the requirements of the federal law that requires states receiving federal funding to provide that all information, gathered in the course of receiving complaints and reports of elder abuse and in making referrals, remains confidential. (42 U.S.C. §§ 3058d(a)(6)(C), 3058g(d), 3058i(b)(9)(D), (e)(2).)

Section 9725 then allows "disclosure" if "authorized by the patient or resident or his or her conservator of the person or legal representative." This language, however, does not make it clear what exactly is to be disclosed upon the consent being given—whether just the identity of the person giving consent, just the statements and personal information of the person giving consent, the complete records and files relating to the person giving consent, or some wider net of identities, records and information, as plaintiff claims. We reject as an unreasonable interpretation of the language plaintiff's suggestion that a consent given by a patient, resident, conservator or legal representative authorizes disclosure of a third person's identity, statements or information included in the investigatory records of the long-term care ombudsman, as plaintiff sought here.[3] Any other construction of section 9725 would risk making it inconsistent with the related federal statutes on the same subject and undermine the apparent purpose of the ombudsman statute.

---

[3] We restrict our consideration of the scope of the consent exception to the situation before us. That is, we only consider whether plaintiff's consent was sufficient to obtain, as the trial court ordered in the disputed portion of its order, all of the records of OSNC relating to Foothill Oaks Care Center for the period of time specified.

## V.

## The Federal Law

██ Specifically, section 3058d of the federal law (42 U.S.C. § 3058d) provides a number of eligibility requirements for a state plan to receive federal funding. (42 U.S.C. § 3058d(a).) One of these requirements is an assurance that the state will conduct a program of services for receipt of reports of elder abuse and referral of complaints to law enforcement or public protective service agencies if appropriate. (42 U.S.C. § 3058d(a)(6)(A).) Section 3058d(a)(6)(C) requires "all information gathered in the course of receiving reports and making referrals shall remain confidential . . . ." The statute lists three exceptions: "(i) if all parties to such complaint consent in writing to the release of such information; [¶] (ii) if the release of such information is to a law enforcement agency, public protective service agency, licensing or certification agency, ombudsman program, or protection or advocacy system; or [¶] (iii) upon court order . . . ." (42 U.S.C. § 3058d(a)(6)(C)(i)–(iii).)

██ Similarly, section 3058i of the federal law (42 U.S.C. § 3058i) provides a state agency must develop and enhance programs for the prevention of elder abuse, neglect, and exploitation in order to receive federal funding. (42 U.S.C. § 3058i(a).) The state agency must use the federal funding for specified purposes, among which is the prompt investigation of any report of known or suspected elder abuse, neglect or exploitation and on a finding of such abuse, neglect or exploitation, action, including appropriate referral, to protect the health and welfare of the subject individual. (42 U.S.C. § 3058i(b)(9)(B)(i), (ii).) Section 3058i(b)(9)(D), requires the state agency to preserve "the confidentiality of records in order to protect the rights of older individuals." The state agency must also "require that all information gathered in the course of receiving a report described in subsection (b)(9)(B)(i) [of this section], and making a referral described in subsection (b)(9)(B)(ii) [of this section], shall remain confidential." (42 U.S.C. § 3058i(e)(2).) Again, the statute provides three exceptions to such confidentiality: "(A) if all parties to such complaint or report consent in writing to the release of such information; [¶] (B) if the release of such information is to a law enforcement agency, public protective service agency, licensing or certification agency, ombudsman program, or protection or advocacy system; or [¶] (C) upon court order." (42 U.S.C. § 3058i(e)(2)(A)–(C).)

Focusing on the consent exceptions in section 3058d (42 U.S.C. § 3058d(a)(6)(C)(i)) and section 3058i (42 U.S.C. § 3058i(e)(2)(A)),[4] it is readily apparent the federal law allows disclosure of information gathered in the course of an investigation into suspected abuse only if "all" parties "to" the complaint or report consent. The complainant, a person who initiates the state's investigation or other person whose information is contained in the complaint or investigatory report cannot consent to the disclosure of anything beyond their individual statement(s) or personal information without the consent of all other persons whose statements or information are contained in the investigatory record to be disclosed. If obtained, the consent of all such individuals extends only to the complaint or report in which their statement or information appears. They cannot consent to the disclosure of other people's complaints or reports. They are not parties "to" such complaints or reports.

We find the disclosure authorized by consent in section 9725, when considered in the context of these federal statutes, to be similarly restricted. Such construction of the statute also promotes the evident purpose of the state ombudsman program, undertaken in compliance with the federal law, to provide for independent investigation of suspected elder abuse or neglect with the goal of remedying any problems found and ensuring the protection of the elderly living in long-term care facilities. It avoids an interpretation of section 9725 that would undermine the ability of the long-term care ombudsman to perform its essential duty of independent investigation of complaints and reports of abuse.

Here the consent of plaintiff, and originally of all defendants to the underlying litigation, was not the equivalent of consent by "all" parties "to" the complaints and reports of OSNC regarding the Foothill Oaks Care Center. The order of the trial court was not legally justified based on consent.

---

[4] OSNC also relies heavily on section 3058g of the federal law, which contains a provision specifically regarding disclosures by the state or local ombudsman. (42 U.S.C. § 3058g(d).) Upon careful reading of section 3058g, however, it appears the section addresses the broader record and data collection undertaken by an ombudsman program and not just an ombudsman's investigatory records. (See 42 U.S.C. § 3058g(d)(1) [files maintained by program include records collected under subsection (b)(1) governing access to medical and social records of residents plus facility records, as well as records collected under subsection (c) establishing a statewide data collection and reporting system].) With respect to this broader category of data and records, the ombudsman is given discretion over disclosure (42 U.S.C. § 3058g(d)(2)(A)), although the statute prohibits the ombudsman, in exercising such discretion, from disclosing the identity of any complainant or resident with respect to whom the ombudsman maintains files or records without the consent of such person or his/her legal representative or a court order. (42 U.S.C. § 3058g(d)(2)(B)(i)–(iii).) Discretionary disclosure of records under section 3058g is not involved here.

## VI.

### The Court Order Exception in Section 9725

Section 9725 provides for confidentiality of OSNC's investigatory records and files "unless disclosure is . . . required by a court order." Plaintiff notes disclosure was required by court order in this case.

 It seems self-evident a court considering a request for an order disclosing confidential records under section 9725 is not justified in ordering disclosure simply because the request is made. Applying the rule of necessary implication (*Welfare Rights Organization v. Crisan, supra,* 33 Cal.3d 766, 771 [" '[w]hatever is necessarily implied in a statute is as much part of it as that which is expressed' "]), we conclude section 9725 necessarily includes a limitation that a court issue an order disclosing long-term care ombudsman records only when it is either necessary to enforce the provisions of the state ombudsman law (Welf. & Inst. Code, § 9700 et seq.) (by analogy to § 9715, subd. (d)) or when a party's compelling need for discovery outweighs the fundamental interest in maintaining the confidentiality of the ombudsman's records. We read this latter requirement into section 9725 in order to avoid any constitutional infirmity in the statute since we conclude the personal information contained in OSNC's records and files is covered by the right to privacy guaranteed by the California Constitution. (Cal. Const., art. I, § 1; *Braxton v. Municipal Court* (1973) 10 Cal.3d 138, 145 [109 Cal.Rptr. 897, 514 P.2d 697] [if statute by fair and reasonable interpretation can be given a meaning consistent with the Constitution, the statute will be given that meaning rather than another in conflict with the Constitution]; see *Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 530–531 [174 Cal.Rptr. 160].)

As so interpreted, we conclude, as we discuss *post,* the trial court was not legally justified in entering the disputed portion of its order regarding OSNC's records and files.

## VII.

### The California Constitutional Right to Privacy

 The California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy.*" (Cal. Const., art. 1, § 1, italics added.) The constitutional guarantee of the right to privacy prevents " 'the improper use of information properly obtained for a specific

purpose . . . for another purpose or the disclosure of it to some third party.' " (*Pitman v. City of Oakland* (1988) 197 Cal.App.3d 1037, 1045 [243 Cal.Rptr. 306], quoting *White v. Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].)

According to OSNC, almost everything in the records of its investigations is highly personal in nature. The information gathered is obtained for the purpose of a specific ombudsman investigation and is by statute confidential. Such information is also covered by the constitutional right to privacy.

█ The right to privacy privilege is, however, conditional. It may be abridged when, but only when, there is a compelling opposing state interest. (*Garstang, supra*, 39 Cal.App.4th at p. 532.) "One such compelling public need lies in facilitating the 'ascertainment of truth' in connection with legal claims. [Citations.]" (*Ibid.*) The strength of the two interests, the right to privacy and the ascertainment of truth, must each be assessed.

█ We find the case of *Garstang, supra*, 39 Cal.App.4th 526, informative regarding the appropriate analysis for weighing the strength of an asserted right to privacy interest. In *Garstang*, the reviewing court determined communications with a workplace ombudsman were entitled to a qualified privilege based on the constitutional right to privacy. Garstang, an employee at a private university, sued her employer and three coworkers for damages for slander and intentional infliction of emotional distress. (*Id.* at pp. 529–530.) Garstang sought to depose the three coworkers about statements made during informal mediation sessions with the university's ombudsperson. (*Id.* at p. 530.) The reviewing court held the communications disclosed during the sessions with the ombudsperson, although not covered by the mediation privilege of Evidence Code former section 1119, should be protected under the constitutional right to privacy, which in this case outweighed the competing value in ascertaining truth for litigation. (*Garstang, supra*, at pp. 532–535.) In considering the strength of the privacy interest covering the coworkers' communications with the workplace ombudsman, the *Garstang* court applied the following four factors: (1) whether "the communication was one made in the belief that it would not be disclosed," (2) whether "confidentiality was essential to the maintenance of the relationship between the parties," (3) whether "the relationship was one that society considers worthy of being fostered," and (4) whether "the injury to the relationship incurred by disclosure would be greater than the benefit gained in the correct disposal of [the] litigation." (*Id.* at p. 534, citing *Kientzy v. McDonnell Douglas Corp.* (E.D.Mo. 1991) 133 F.R.D. 570, 572.)

Applying those same factors here demonstrates the privacy interest in OSNC's investigatory records is extremely strong.

OSNC submitted in support of its motion for a protective order a declaration of Joan Parks, its program manager, in which Parks declared "[i]n conducting its investigations, OSNC assures prospective witnesses that the information they provide is made confidential and privileged by state and federal law, and will not be made public, nor will it be released to the patient, the facility, or other witnesses, except as ordered by a court."

In the same declaration, Parks stated, "[p]reservation of the confidentiality of OSNC records in individual cases is absolutely critical to OSNC's ability to fulfill its overarching mission to protect the rights of those vulnerable patients who live in long[-]term care facilities. Without the guarantee of confidentiality, witnesses of any kind—whether they be the patient, a family member or other relative, employees or other institutional staff, or any other third party—would hesitate or possibly balk before making a complaint or reporting the details of alleged abuse, neglect or mistreatment to OSNC, if they believed that the details of their complaint or witness statements or documents provided could be made public."

And, there can be no doubt the relationship between the long-term care ombudsman and elderly patients or residents of long-term care facilities and their family members is one worthy of societal support. The existence of the federal law and California's state ombudsman program is clear evidence of the value placed on investigation of complaints and reports of elder abuse as an important part of the protection of these potentially vulnerable members of our society.

According to the Parks declaration, in excess of 39,000 investigations are conducted annually by all authorized long-term care ombudsman programs in California. OSNC conducts more than 4,000 of these investigations. Disclosure of even a small percentage of these ombudsman investigatory files will cause serious damage to the ability of the ombudsman statewide to collect the information necessary to resolve problems occurring in long-term care facilities once it becomes known that such records are available for discovery. The risk of such injury generally outweighs the benefit of making such records available for litigation.

Thus, the undisputed evidence established a very strong constitutional privacy interest in the records sought to be discovered by plaintiff.

 We turn to the question of whether the records could nevertheless be compelled for the purpose of plaintiff's litigation here. We start with the premise "that inquiry into one's private affairs will not be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered might lead to other, and relevant, evidence. [Citation.] ' "When

compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information." ' [Citations.] [¶] And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.' [Citations.]" (*Board of Trustees v. Superior Court, supra,* 119 Cal.App.3d at p. 525, italics omitted.)

■ The person seeking discovery of material protected by the constitutional right to privacy "has the burden of making a threshold showing that the evidence sought is 'directly relevant' to the claim or defense." (*Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 665 [4 Cal.Rptr.2d 564].) A showing of direct relevancy may trigger a balancing by the court of the need for the discovery against the fundamental right of privacy, but "the balance will favor privacy for confidential information in third party . . . files unless the litigant can show a compelling need for the particular documents and that the information cannot reasonably be obtained through depositions or from nonconfidential sources." (*Harding Lawson Associates v. Superior Court* (1992) 10 Cal.App.4th 7, 10 [12 Cal.Rptr.2d 538].)

■ In this case, OSNC established through evidence submitted with its motion for a protective order that its files and records were privileged and protected by a strong privacy interest. In response, plaintiff took the position that the material should be disclosed based on consent and the stipulated court order. Plaintiff never attempted to establish the evidence was directly relevant to her claims. She made no showing of need, much less compelling need, for the records. She made no showing that the information could not reasonably be obtained through depositions or from nonconfidential sources. Given this complete failure by plaintiff, the trial court could only have reasonably concluded the strength of the privacy interest shown by OSNC necessarily outweighed any theoretical interest by plaintiff in the ascertainment of truth for purposes of her litigation. The trial court erred in granting *any* discovery of the confidential records of OSNC containing third party information. Plaintiff's offer to accept redacted records in order to protect third party privacy interests was irrelevant. The trial court should never have reached the issue of fashioning an appropriate protective order when plaintiff had not shown a basis for disclosure at all.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to set aside and vacate the portion of its ruling and order in this case requiring petitioner OSNC to provide any records beyond those regarding Lavern

Staples made by Staples, his representatives, or family. The alternative writ and stay are discharged with the finality of this opinion. The parties shall bear their own costs of these proceedings. (Cal. Rules of Court, rule 8.490(m)(2).)

Sims, Acting P. J., and Robie, J., concurred.