[No. B170305. Second Dist., Div. Three. Mar. 30, 2004.]

PHILIP M. SAETA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KATHLEEN DENT, Real Party in Interest.

COUNSEL

Charlston, Revich & Chamberlin, Tim Harris and Marc V. Allaria for Petitioner.

No appearance for Respondent.

Jones, Mahoney, Brayton & Soll and Paul M. Mahoney for Real Party in Interest.

OPINION

ALDRICH, J.—

## INTRODUCTION

Philip M. Saeta, judge retired (petitioner) has petitioned this court for a peremptory writ of mandate. He asks us to direct the trial court to vacate its order granting a motion to compel his deposition testimony. At issue is whether statements are privileged when made during a hearing conducted by an employment termination review panel. We conclude that the proceeding,

as constituted pursuant to an employment contract, was neither an arbitration nor a mediation. Thus, the statements are not protected by the privileges of Evidence Code sections 703.5 and 1119. We further hold an order compelling petitioner to testify does not violate his right to privacy contained in California Constitution, article I, section 1. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Kathleen Dent entered into an agreement with The Farmers Insurance Group of Companies (Farmers) to sell insurance for Farmers. Less than two years later, Dent was notified of her discharge from employment.

According to the agreement, Dent was entitled to a review of a discharge decision by a termination review board (the review board). Section D of the agreement reads, "In the event this Agreement is terminated by [Farmers], the Agent [Dent] may within ten (10) days of receiving the notice of termination request a review of the termination by a termination review board. [¶] The termination review board will be composed of: [¶] 1. An Agent of [Farmers] selected by the terminated Agent [Dent] . . . [¶] 2. The Regional Manager or a representative of said Regional Manager; and [¶] 3. A third party to be mutually selected by the other two members of the board. [¶] The Review Board will convene within twenty (20) days of the request by the Agent [Dent] at the Regional Office or such other convenient place selected by the Regional Manager. [¶] The Board will submit a summary of the hearing and its recommendations to the Executive Home Office. The chief executive officer and staff will review the summary and recommendations, reach a decision and promptly advise the Agent [Dent] of that decision."

Pursuant to section D, Dent requested a review board be held and nominated Daniel Youngs as the agent selected by her; Farmers chose Ron Cable, vice-president and state executive director in California. Petitioner was appointed to serve as the third party. Farmers notified Dent that she could be represented at the hearing by an attorney, could call witnesses, and could have a court reporter present.

After the hearing, the review board issued a one-page recommendation to the home office upholding Dent's discharge as justified. The recommendation contained neither a "summary of the hearing" nor an explanation for the review board's vote. Dent filed her lawsuit seeking damages for, among other things, breach of her agreement and breach of the implied covenant of good faith and fair dealing.

In connection with her lawsuit, Dent sought to depose petitioner as a nonparty witness. Petitioner answered many questions during the deposition. However, he refused to answer questions about what occurred at the hearing, about statements made before the review board, or about whether he thought

the procedure set forth in the agreement had been followed. In so refusing, petitioner invoked the privilege of Evidence Code section 703.5.

Dent moved to compel petitioner's testimony and argued Evidence Code section 703.5 applied by its terms to judicial and quasi-judicial proceedings, arbitration, and mediation, and that as defined by section D and viewed by the participants, the review board conducted none of those four types of proceedings.

Both Farmers and petitioner opposed Dent's motion to compel. In its opposition, Farmers *acknowledged that the review board conducted neither a mediation nor an arbitration,* but argued that the recommendation had been subject to the attorney work-product privilege. In his opposition, petitioner argued that the privileges of Evidence Code sections 703.5 and 1119 applied in furtherance of the legislative intent to encourage alternatives to judicial determination of disputes. Petitioner asserted the review board proceeding should be viewed as a mediation.

The trial court granted Dent's motion reasoning "[t]he [termination review board] hearing does not qualify as a judicial or quasi-judicial proceeding, arbitration or mediation, and therefore [Evidence Code section] 703.5 does not apply." The court also held the review board is not a mediation as defined by Evidence Code section 1115, subdivision (a) because it "does not serve to actually resolve and settle disputes." Petitioner's writ petition ensued.

## CONTENTION

Petitioner contends the trial court abused its discretion by not cloaking the statements made at the review board hearing with the protections afforded under Evidence Code sections 703.5 and 1119.

## DISCUSSION

1. *Standard of review.*

■ The trial court's ruling on a motion to compel discovery is reviewed for abuse of discretion. (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1261 [245 Cal.Rptr. 682].)

With respect to the application of a privilege, if "[a] privilege does not appear as a matter of law, the appellate court may not disturb the lower court's findings if there is any substantial evidence to support them. [Citation.]" (*BP Alaska Exploration, Inc. v. Superior Court, supra,* 199 Cal.App.3d at p. 1261.)

■ We are also called upon to interpret the agreement's definition of the review board. (*Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 538–539 [260 Cal.Rptr. 713] [agreement ambiguous with respect to whether parties agreed to arbitration].) The interpretation of a contract is subject to de novo review when construction does not turn on the credibility of extrinsic evidence. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520 [132 Cal.Rptr.2d 151].) ■ We are not bound by the trial court's interpretation of the agreement when the agreement is unambiguous. (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1111 [63 Cal.Rptr.2d 261].)

### 2. *The review board hearing is neither an arbitration nor a mediation.*

Farmers concedes that the proceeding conducted by its review board is neither an arbitration nor a mediation. It is petitioner who, as a third party witness, seeks to invoke the privileges in an effort to uphold the greater policy of encouraging alternative dispute resolution. We conclude the review board's proceeding does not constitute an arbitration or a mediation,[1] with the result the privileges of Evidence Code sections 703.5 and 1119 are inapplicable.

Section 703.5 of the Evidence Code provides in part: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding . . . ."

The intent behind Evidence Code section 1119 is clear. (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14–15 [108 Cal.Rptr.2d 642, 25 P.3d 1117].) It states, "(a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal

---

[1] Obviously, the review board conducts none of the remaining proceedings enumerated in Evidence Code section 703.5. A judicial proceeding is one that takes place in the constitutionally created courts. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 109, p. 162, citing Cal. Const., art. VI, § 1.) A quasi-judicial proceeding is held before a governmental or administrative board or officer vested with limited judicial powers. (*B. C. Cotton, Inc. v. Voss* (1995) 33 Cal.App.4th 929, 954 [39 Cal.Rptr.2d 484]; 7 Witkin, *supra*, § 113, p. 166.)

proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] . . . [¶] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."

The question for resolution here is whether the procedure to which the parties consented in the agreement actually constitutes arbitration or mediation such that one of these two privileges would apply.

Arbitration is not defined in any statute. One appellate court surveyed the various definitions of arbitration and quoted from Black's Law Dictionary that arbitration is " '[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard. Where arbitration is voluntary, the disputing parties select the arbitrator who has the power to render a binding decision.' [Citation.]" (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 684 [57 Cal.Rptr.2d 867], quoting from Black's Law Dictionary (6th ed. 1990) p. 105, col. 1; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 [10 Cal.Rptr.2d 183, 832 P.2d 899] [finality core component of arbitration].) The *Cheng-Canindin* Court concluded "although [an] arbitration can take many procedural forms, a dispute resolution procedure is not an arbitration unless there is a third party decision maker, a final and binding decision, and a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision." (*Cheng-Canindin v. Renaissance Hotel Associates, supra,* at pp. 687–688, fn. omitted; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2002) ¶ 5:6, p. 5-3; *Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 503–504 [67 Cal.Rptr.2d 140].)

■ Much like here, in *Cheng-Canindin*, the employer had established a "review committee" to resolve disputes. The appellate court affirmed the denial of the employer's motion to compel arbitration before the "review committee." The *Cheng-Canindin* Court analyzed the "review committee" procedure and concluded that it was not an arbitration because there was no third party decision maker; the procedure lacked impartiality; it was controlled exclusively by one of the parties to the dispute; and participation was voluntary so that the employer did not intend that the review committee procedure would constitute binding arbitration. (*Cheng-Canindin v. Renaissance Hotel Associates, supra,* 50 Cal.App.4th at pp. 688–693.)

Here, the review board did not conduct an arbitration. There was no third party decision maker—the review board was comprised of *three* panel members,

at least two of whom were employees of Farmers.[2] The wording of the agreement made the review board process voluntary. Section D provided that the terminated agent *"may . . .* request a review of the termination by a termination review board." (Italics added.) Also, the review board had no authority to render a final and binding decision—it merely submitted its recommendation to the executive home office. Finally, neither Farmers nor Dent sought to confirm the recommendation as an arbitration award (Code Civ. Proc., § 1285), indicating Farmers did not intend that the review board hearing would constitute arbitration.

Nor was the review board proceeding tantamount to non-binding arbitration, as petitioner would have it. Farmers, whose agreement created the review board, conceded that the review board proceeding was not an arbitration at all. In any event, many consider advisory or nonbonding arbitration to be "a form of mediation (facilitated negotiations)." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra,* ¶ 5:36, p. 5-22.) As elucidated below, the review board proceeding was not a mediation.

█ Mediation is defined in both the Code of Civil Procedure and the Evidence Code as a "process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." (Code Civ. Proc., § 1775.1, subd. (a); Evid. Code, § 1115; see also 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 472, pp. 902–903; *Eisendrath v. Superior Court* (2003) 109 Cal.App.4th 351, 358 [134 Cal.Rptr.2d 716].)

Generally, mediation falls within two categories: traditional or classic mediation on the one hand, and voluntary settlement conferences on the other hand. In classic mediation, attorneys are generally not involved. The mediator meets directly with the parties to facilitate negotiation. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra,* ¶¶ 3:10, 3:12, pp. 3-3, 3-24.11 to 3-24.12.) The classic mediator is passive, expressing no judgment or opinion on the merits of either position. (*Ibid.*; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 472, p. 903.) By contrast, in the latter form, attorneys are present; and the mediator takes a more active role, often expressing an opinion on the merits, but without authority to render a decision. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra,* ¶ 3:11, p. 3-4; *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 715, fn. 5 [49 Cal.Rptr.2d 722].) According to the Law Revision Commission

---

[2] The record also indicates that the third panel member, petitioner, was appointed by Farmers without input from Dent.

comments to chapter 2 of division 9 of the Evidence Code concerning the mediation privilege (Evid. Code, §§ 1115–1128), "a mediator should not have authority to resolve or decide the mediated dispute, and should not have any function for the adjudicating tribunal with regard to the dispute, except as a non-decisionmaking *neutral*." (1997 Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (2004 supp.) foll. § 1121, p. 154, italics added.)

█ Mediation takes many forms. "Mediation has been defined in many different ways. In essence, mediation is a process where a 'neutral third party who has no authoritative decision-making power' intervenes in a dispute or negotiation 'to assist disputing parties in voluntarily reaching their own mutually acceptable' agreement. Mediation involves moving parties from focusing on their individual bargaining positions to inventing options that will meet the primary needs of all parties. The concept of *self-determination*, which gives parties control over the resolution of their own dispute, is of major importance to the mediation process. It is thought that self-determination enhances commitment to the settlement terms because parties make decisions themselves instead of having a resolution imposed upon them by an authoritative third party." (Kentra, *Hear No Evil, See No Evil, Speak No Evil: The Intolerable Conflict for Attorney-Mediators Between the Duty to Maintain Mediation Confidentiality and the Duty to Report Fellow Attorney Misconduct* (1997) BYU L.Rev. 715, 718.) The function of the mediator, therefore, is to facilitate the parties to voluntarily reach their own agreement. (6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 472, at pp. 903–904; Kentra, *supra,* BYU L.Rev. at p. 718.)

As contractually constituted, the review board here is not designed to facilitate or assist the parties to voluntarily and independently reach a mutually acceptable agreement. Far from remaining passive and silent about the merits of and solutions to a dispute in an effort to allow the parties to independently reach a settlement, the review board is directed to take evidence and make and transmit recommendations. The review board does not facilitate communications between the parties to assist them in reaching a decision, petitioner's assertion notwithstanding. Rather, the review board is merely a contractual condition precedent to discharging Dent. That is, presented with the decision to terminate Dent from employment, the review board considered the information given it and made a recommendation to the executive home office. No *negotiation* was involved. No settlement was in the offing. Dent had no bargaining position, let alone a modicum of control. There was nothing *voluntary, or bilateral, or mutually accepted* about the result. Manifestly, the review board's function was not to facilitate an arrangement that was satisfactory to all parties.

In an effort to fit the review board's process within the definition of mediation,[3] petitioner argues "the purpose of the [review board] proceeding was to . . . [give] Plaintiff . . . an opportunity to provide evidence and thus facilitate communication between both groups in a proceeding supervised by three representatives for that purpose."

■ While the Law Revision Commission's definition of mediation "is broad, without specific limitations on format . . . ." (1997 Cal. Law Revision Com. com. 29B West's Ann. Evid. Code, *supra*, foll. § 1115, p. 46), at a minimum, mediation appears to require a neutral mediator or group of mediators and have as its aim to facilitate a mutually acceptable result. (Evid. Code, § 1115, subd. (a).) These two prerequisites are absent from the review board here. Apart from petitioner, this review board was comprised of two others, both employees of Farmers. **(8)** An attorney or other *representative of a party is not a mediator.* (*Ibid.*) Petitioner does not argue that the review board's aim is to voluntarily fashion an agreement satisfactory to both sides. Rather, he asserts the purpose of the review board is to "provide Farmers with a second opportunity to *review its decision* . . . ." (Italics added.)

Petitioner argues further that we should presume in favor of including within the ambit of the privilege, any effort to resolve a claim, particularly where Evidence Code sections 703.5 and 1119 do not define the term "mediation." We cannot presume the review board conducts a mediation when not only does the agreement make no mention of "mediation,"[4] but the procedure as set forth by the language of section D does not fall within the meaning of mediation.

■ The mediation and arbitration privileges have a broad sweep and are designed to promote frank exchange of information in an effort to encourage parties to resolve their differences through methods of dispute resolution other than civil litigation. (See *Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra,* 26 Cal.4th at p. 14; *Eisenrath v. Superior Court,*

---

[3] Petitioner also asserts the Legislature did not define mediation in Evidence Code section 703.5 because it wished to avoid establishing an exclusive "method" for mediation that would be entitled to confidentiality. Petitioner is correct to the extent he asserts that mediation is a broad term encompassing a wide range of formats. Yet, regardless of how this form of dispute resolution is defined in the statutes, along with other methods of dispute resolution listed in section 703.5 (Code Civ. Proc., § 1775.1, subd. (a); Evid. Code, § 1115), the review board *was simply not engaging in mediation.*

[4] Dent asserts petitioner never disclosed to her that he was paid $500 by Farmers or that he had served on other review boards for Farmers. If true, this negates petitioner's assertion that the review board hearing is an arbitration or a mediation, because disclosure of prior relationships and payments is required of all arbitrators under Code of Civil Procedure section 1281.9, and failure to disclose would be grounds for disqualification. (Code Civ. Proc., § 1281.91.)

*supra,* 109 Cal.App.4th at 360; *Ryan v. Garcia* (1994) 27 Cal.App.4th 1006, 1010 [33 Cal.Rptr.2d 158]; Code Civ. Proc., § 1775.) The Law Revision Commission sought to protect " 'information disclosed during mediation to encourage this alternative to a judicial determination of the action.' " (*Ryan v. Garcia, supra,* at p. 1009, discussing precursor to Evid. Code, § 1119.)

 But privileges are narrowly construed so as to keep them within the limits of the statutes because they operate to prevent the admission of relevant evidence and impede the correct determination of issues. (*People v. McGraw* (1983) 141 Cal.App.3d 618, 622 [190 Cal.Rptr. 461].) In California, " 'the privileges contained in the Evidence Code are *exclusive* and the courts are not free to create new privileges as a matter of judicial policy. [Citations.]' [Citation.]" (*Garstang v. Superior Court* (1995) 39 Cal.App.4th 526, 532 [46 Cal.Rptr.2d 84] (*Garstang*), quoting from *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) "[T]here is no privilege to refuse to disclose any matter, or to refuse to produce any writing, object, or thing, unless the privilege is created by statute." (*Ibid.,* citing Evid. Code, § 911, subd. (b).) Section 703.5 of the Evidence Code applies only to judicial and quasi-judicial proceedings, arbitration, and mediation. As designed, the review board does not fall within the definition of arbitration, mediation, or the other two listed procedures (see *ante,* fn. 1), with the result that the privileges do not come into play. Statements made before the review board are not subject to the privileges of sections 703.5 and 1119 of the Evidence Code. To apply section 703.5 to events that occur before the review board, we would have to carve out a privilege that does not exist in the texts of the statutes themselves. Nor do we have authority to rework the review board's format in order to fit it within the scope of the privilege; revision of the agreement is a task for Farmers.

### 3. *The qualified privilege under the Constitution does not apply.*

Petitioner contends the order compelling him to testify about statements made at the review board violates his right of privacy contained in California Constitution article I, section 1 and petitioner will be irreparably harmed if required to testify about confidential statements.

*Garstang, supra,* 39 Cal.App.4th 526 established a qualified privilege of ombudspeople derived from the right to privacy in the California Constitution. Garstang, an employee at a private university, sued her employer and three coworkers for damages for slander and intentional infliction of emotional distress. Garstang sought to depose the three coworkers about statements made during informal mediation sessions with the university's ombudsperson. The appellate court held, although the mediation

privilege of former Evidence Code section 1119 did not apply,[5] that the communications disclosed during the sessions with the ombudsperson were protected by the participants' right to privacy contained in the California Constitution. (*Garstang, supra,* at pp. 532, 535; Cal. Const., art. 1, § 1.[6]) As *Garstang* explained, however, that privilege is qualified, and must be balanced against a compelling and opposing state interest. (*Garstang, supra,* at p. 532.)

In balancing the competing interests, *Garstang* held the fundamental right to privacy outweighed the " ' "compelling public need" ' " for discovery in an effort to ascertain the truth. (*Garstang, supra,* 39 Cal.App.4th at p. 533, quoting from *Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 525, 527 [174 Cal.Rptr. 160].) The court explained the right to privacy of individuals who participated in the ombudsperson sessions outweighed the petitioner's interest in disclosure. The court reasoned that the communications at issue included information about private matters of various employees, and confidentiality had been promised by the university. (*Id.* at p. 534.) Of particular importance to the *Garstang* court, was the fact the employees participating in the informal ombudsperson sessions believed the communications were confidential, and the university gave all employees a strict pledge of confidentiality and assurance they could rely on the ombudsperson's confidentiality. Such expectation of confidentiality outweighed the benefit to Garstang of disclosure. (*Id.* at pp. 534–535.)

Relying on *Garstang*, petitioner argues he is protected by the California Constitution's qualified privilege. He acknowledges California does not recognize an ombudsperson privilege, but argues the state recognizes the importance of alternative dispute resolution and deems communications made in mediation to be protected. We conclude, under the facts of this case, petitioner does not enjoy the qualified privilege set forth in article 1, section 1 of the California Constitution.

 Evidence provided by Dent reveals that the information she sought from petitioner does not relate to the private affairs of any other employees of Farmers. Moreover, there is no showing the parties here anticipated the sessions before the review board would be confidential. Unlike *Garstang*, the parties here did not sign a confidentiality agreement. Farmers made no representations that the review board hearing would be held in confidence. Moreover, others who had been present at Dent's review board hearing have

---

[5] At the time *Garstang* was decided, the mediation privilege required a written agreement of the parties. (*Garstang, supra,* 39 Cal.App.4th at pp. 531–532, 532 fn. 3.)

[6] "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursing and obtaining safety, happiness, and privacy." (Cal. Const., art. 1, § 1.)

already testified in depositions without invoking a privilege or a right to privacy. As petitioner observed, the Legislature has clearly and unequivocally expressed its espousal of alternative dispute resolution, underscoring its support by insisting on confidentiality that applies to the parties to mediation as well as to the mediator. (*Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra,* 26 Cal.4th at pp. 13–17; *Eisendrath v. Superior Court, supra,* 109 Cal.App.4th at p. 360; Code Civ. Proc., § 1775.) However, the record shows that the parties proceeded without the expectation that what was said or occurred during the review board hearing was confidential. The parties' right to privacy in this case is outweighed by Dent's need for discovery to facilitate the effort to ascertain the truth. (*Garstang, supra,* 39 Cal.App.4th at p. 532.) Accordingly, the privilege embodied in the right to privacy is inapplicable here.

We hold the trial court did not err in granting Dent's motion to compel petitioner's deposition testimony because the testimony being sought is not protected by either the privileges of Evidence Code sections 703.5 and 1119, or by the right to privacy contained in article 1, section 1 of the California Constitution.

## DISPOSITION

The petition for writ of mandate is denied. Each party to bear its own costs.

Croskey, Acting P. J., and Kitching, J., concurred.