NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| RANDY BATEN, on behalf of himself and all others similarly situated, | No. 19-55865 |
| Plaintiff-Appellee, | D.C. No. 2:18-cv-10229-GW-MRW |
| v. | |
| MICHIGAN LOGISTICS, INC., DBA Diligent Delivery Systems; CALIFORNIA LOGISTICS, INC., DBA Diligent Delivery Systems; WESTERN DELIVERY AND LOGISTICS, LLC, DBA Diligent Delivery Systems; LARRY BROWNE, | MEMORANDUM* |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted September 1, 2020
Pasadena, California

Before: SILER,** BERZON, and LEE, Circuit Judges.
Dissent by Judge LEE

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

1

Michigan Logistics, doing business as Diligent, appeals the district court's order denying Diligent's motion to compel arbitration. We hold that the parties did not have an agreement to arbitrate, and so affirm.

We have jurisdiction over this interlocutory appeal under the Federal Arbitration Act (FAA), 9 U.S.C. § 16(a)(1)(B). Section 16(a)(1)(B) of the FAA allows federal appellate courts to review orders denying a petition compelling arbitration under § 4 of the Act, which in turn allows courts to compel arbitration where parties have "a written agreement for arbitration." *Id.* § 4. Jurisdiction is proper under § 16 where a party has "either move[d] to compel arbitration and stay litigation explicitly under the FAA, or [made] it plainly apparent that he seeks only the remedies provided for by the FAA—namely, arbitration." *W. Security Bank v. Schneider Ltd. P'ship*, 816 F.3d 587, 589 (9th Cir. 2016). Because Diligent invoked the FAA in its supplemental briefing, § 16 applies to this appeal.

The FAA does not define "arbitration." This circuit looks to state law to determine whether an agreement constitutes an agreement to arbitrate.[1] *Goldman*

---

[1] We are in a minority of circuits in doing so: The First, Second, Sixth, and Tenth Circuits apply federal common law to give content to the FAA's terms. *See Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6–7 (1st Cir. 2004); *Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 143 (2d Cir. 2013); *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 693 (6th Cir. 2012) *and Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Plan., Inc.*, 390 F.3d 684, 689 (10th Cir. 2004). *But cf. Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1062 (5th Cir. 1990).

*Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014); *Portland Gen. Elec. Co. v. U.S. Bank Tr. Nat'l Ass'n*, 218 F.3d 1085, 1086 (2000).

Under California law, an arbitration agreement is an agreement to "'a process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard. Where arbitration is voluntary, the disputing parties select the arbitrator who has the power to render a binding decision.'" *Saeta v. Superior Court*, 117 Cal. App. 4th 261, 268 (2004) (quoting *Chen-Canindin v. Renaissance Hotel Assocs.*, 50 Cal. App. 4th 676, 684 (1996)).

Here, the dispute resolution provision of the parties' contract does not bind the parties to pursue dispute resolution through a third party, and does not contain any of the elements of a true arbitration agreement. *See Chen-Canindin*, 50 Cal. App. 4th at 684. The agreement binds the parties only to "resolve any disputes . . . directly or with an agreed form of alternative dispute resolution." But arbitration is only "one of several mechanisms of 'alternative dispute resolution,' which is '[a] procedure for settling a dispute *by means other than litigation*.'" *Greenwood v. CompuCredit Corp.*, 615 F.3d 1204, 1208 (9th Cir. 2010), *rev'd on other grounds*, 565 U.S. 95 (2012) (alteration and emphasis in original) (quoting Black's Law Dictionary 112). Mediation, for instance, is a form of alternative dispute resolution that is not arbitration. *See id.; Saeta*, 117 Cal. App. 4th at 269. The parties'

contractual agreement to agree to *some* form of alternative dispute mechanism is therefore not an agreement to be bound *by arbitration*.

Nor have the parties formed a post-dispute agreement to arbitrate. Although Baten initially seemed willing to go forward with some form of arbitration, the parties never reached a meeting of the minds on material points of the purported arbitration agreement and therefore did not establish a contractual agreement. *See Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006). "[A] decision maker who is chosen by the parties" is a key attribute of a "true arbitration agreement." *Chen-Canindin*, 50 Cal. App. 4th at 684. Diligent never agreed to arbitrate under the American Arbitration Association's auspices, as Baten proposed in his initial letter. Under California law, "failure to reach a meeting of the minds on all material points prevents the formation of a contract." *Bustamante*, 141 Cal. App. 4th at 215. As Baten and Diligent never agreed on a material point—the mechanism for choosing an arbitrator and the applicable rules governing the arbitration, including payment of the arbitrator's fees—the post-dispute correspondence regarding arbitration therefore does not constitute an enforceable agreement to arbitrate.

Baten's demand for arbitration likewise does not reach the level of conduct required to establish an implied-in-fact arbitration agreement. We have held an agreement was implied in fact where a party "initiated the arbitration, attended the

hearings with representation, presented evidence, and submitted a closing brief of fifty pages," *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994), and where a plaintiff "affirmatively urged the arbitrators to decide [the issue] and asserted their authority to do so" and then, "after an unfavorable decision, challenge[d] the authority of the arbitrators to act." *PowerAgent, Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187 (9th Cir. 2004); *accord Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176–77 (2015). These cases required far more than an initial demand to establish a post-dispute arbitration agreement. Baten's initial arbitration request does not meet the standard set out in the case law.

Neither the text of the parties' contractual agreement nor their conduct, therefore, established an agreement to arbitrate. "[T]he FAA limits courts' involvement to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Because we hold that no valid arbitration agreement exists between the parties, we may not reach the other issues on appeal, including the survival of the dispute resolution provision; whether the various other defendants were bound by the dispute resolution provision; the meaning of the dispute resolution provision; and the applicability of the class action waiver under California law.

The judgment of the district court is **AFFIRMED**.

*Randy Baten v. Michigan Logistics, Inc.*, No. 19-55865
LEE, Circuit Judge, dissenting:

This case hinges on the meaning of the term "Alternative Dispute Resolution" in the Dispute Resolution section of the parties' agreement:

> **15. Dispute resolution:** [Michigan Logistics] and Operator both agree to resolve any disputes between [Michigan Logistics] and Operator directly or with an agreed form of Alternative Dispute Resolution. Both [Michigan Logistics] and Operator agree that neither will engage or participate in a collective or class suit against the other.

Randy Baten argues that the parties never agreed to arbitrate because the term "Alternative Dispute Resolution" — which is not defined in the agreement — can include mediation or other non-binding forms of dispute resolution. But based on the full context of the Dispute Resolution section, "Alternative Dispute Resolution" can only mean one thing — arbitration. I thus respectfully dissent and would reverse the district court's denial of the motion to compel arbitration.

\* \* \* \* \*

In interpreting a contract, we must not fixate on a single word and instead should give full meaning to all the words in a contractual provision. *See, e.g., Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) ("[T]he intention of the parties is to be collected from the entire instrument and not detached portions thereof . . . .") (internal citation omitted). And consistent with that principle, California does not appear to require the use of the word "arbitration" to

1

have a valid arbitration agreement. *See Chen-Canindin v. Renaissance Hotel Assocs.*, 57 Cal. Rptr. 2d 867, 871–72 (Cal. Ct. App. 1996) (discussing "attributes" of an arbitration provision but not requiring the use of the word "arbitration").

Here, the Dispute Resolution provision makes clear that the parties have ruled out litigation: the parties agree to "resolve any disputes . . . directly" (*i.e.*, negotiate and settle the case) *or* "with an agreed form of Alternative Dispute Resolution." As the majority points out, the term "alternative dispute resolution" can encompass non-binding dispute resolution such as mediation. But in the context of this provision, the parties could not have intended "alternative dispute resolution" to include mediation because otherwise they would be in a no man's land where there is no binding way to resolve any disputes. Thus, I believe that the most reasonable reading of "an agreed form of Alternative Dispute Resolution" is that the parties agreed to arbitration, though they did not decide on the specifics (*e.g.*, one or multiple arbitrators, specific rules that must apply, the ADR provider). It appears that Mr. Baten, too, agreed with this reading because he initially submitted a demand for arbitration "pursuant to an Agreement signed on April 5, 2010" before he backtracked three months later.

I would also find that this arbitration provision survives the termination of the agreement under *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991). The Supreme Court in *Litton* advised that courts should "presume as a matter of contract

2

interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement." *Id.* at 208. While *Litton* arose in the context of a collective bargaining agreement, its reasoning applies equally to other agreements, and at least one of our sister circuits has invoked *Litton* in a non-labor agreement. *See Huffman v. Hilltop Cos., LLC*, 747 F.3d 391 (6th Cir. 2014). Thus, I believe that the parties agreed to a valid arbitration agreement, which survived the termination of the contract.

I respectfully dissent.