Filed 1/28/26  Raschkovsky D.D.S. M.S. v. Delphi Investors CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RASCHKOVSKY D.D.S. M.S., INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DELPHI INVESTORS, LLC, <br><br> Defendant and Respondent. | B327224 <br><br> (Los Angeles County Super. Ct. No. 21SMCV00304) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Reversed and remanded.

The Mashian Law Group, Bryan Mashian, and Walter Moore for Plaintiff and Appellant.

Hill, Farrer & Burrill, William W. Steckbauer, and Sean A. Topp for Defendant and Respondent.

Plaintiff and appellant Raschkovsky D.D.S. M.S., Inc. (Raschkovsky) leased office space from defendant and respondent Delphi Investors, LLC (Delphi) in 2010. Some years later, Raschkovsky exercised an option to extend the lease, but the parties could not agree on the appropriate market rent. The lease outlined a procedure for the determination of the market rent, which involved the appointment of arbitrators to decide. The parties appointed arbitrators, and a market rent was selected, but Raschkovsky believed the procedures outlined in the lease were not followed. The company filed a complaint alleging a single cause of action for declaratory relief to that effect, and Delphi filed a motion for judgment on the pleadings contending the suit was an improper attack on the arbitration award—which should have instead been challenged via a petition to vacate the arbitration. The trial court agreed and sustained the motion, but declined to grant leave to amend to plead the alternative theory of relief. We consider whether this was error.

## I. BACKGROUND

### A. *Relevant Lease Terms*

In July 2010, Raschkovsky, as tenant, and Delphi, as landlord, entered into a "Standard Office Lease" (the lease) pursuant to which Raschkovsky leased an office suite in Beverly Hills (the premises) from Delphi.

The basic term of the lease was five years. The lease provided Raschkovsky three options to extend the term of the lease for five-year periods ("option terms"). The lease also provided a schedule of market rent to be applied during the first option term. It did not, however, set a schedule of rent for any subsequent option terms.

According to the option extension procedure outlined in the lease, upon receiving Raschkovsky's notice stating its interest in exercising the option, Delphi was to deliver a notice setting the rent for the option term. Raschkovsky was then required to provide a written acceptance, but it could also object to the stated rent. If Raschkovsky objected, the parties were to use their best good faith efforts to agree upon market rent. If they could not do so within fifteen days, then three arbitrators were to be selected, pursuant to procedures outlined in section 31(d) of the lease, "and within three (3) business days following such selection, each party [was to] submit to each other and to the arbitrators a separate determination of the Market Rent."

Section (d) of Article 31 reiterated that if Delphi and Raschkovsky failed to reach an agreement on market rent "then each party shall make a separate determination of the Market Rent which shall be submitted to each other and to arbitration in accordance with the following items (i) through (vii)[.]" Subdivision (i) states Raschkovsky and Delphi were each to appoint an arbitrator, and those two arbitrators were to appoint a third. "The determination of the arbitrators shall be limited solely to the issue of whether Landlord's or Tenant's submitted Market Rent is the closest to the actual Market Rent as determined by the arbitrators, taking into account the requirements of item (b), above (i.e., the arbitrators may only select Landlord's or Tenant's determination of Market Rent and shall not be entitled to make a compromise determination)." The three arbitrators were required to "reach a decision as to whether the parties shall use Landlord's or Tenant's submitted Market Rent, and shall notify Landlord and Tenant thereof." "The

3

decision of the majority of the three (3) arbitrators shall be binding upon Landlord and Tenant."

The lease also includes an attorney fees clause that states the losing party shall pay the winning party's attorney fees and costs "[i]n any action to enforce the terms of this Lease . . . ."

### B.  The Rent Dispute

In April 2020, approximately ten years after the lease was first signed, Raschkovsky informed Delphi that it intended to exercise its option to further extend the lease.  Delphi acknowledged receipt by sending Raschkovsky notice of the proposed rent for that option period.  Raschkovsky objected to the proposed rent.  Raschkovsky and Delphi attempted to resolve their differences regarding the rent, but were unable to do so.

Later that month, Raschkovsky appointed Phyllis Palin of Lee & Associates (Palin) as its arbitrator and Delphi appointed Daniel Chiprut of Commercial Asset Group (Chiprut).  Though the lease stated Raschkovsky and Delphi were to present their respective proposed market rents to three arbitrators, the first two arbitrators instead each produced a report explaining what the arbitrator believed was the appropriate market rent.  Palin's report asserted the market rent for the premises would be $6.08 per square foot per month.  Chiprut's report asserted the market rent would be $7.50 per square foot per month.  Palin and Chiprut then appointed a third arbitrator, Chris Isola (Isola), but he resigned before opining on the market rent for the premises because he felt he was being pressured by Delphi.  Palin and Chiprut then appointed Jim Burnap of Beitler Commerical Realty Services (Burnap) as the third arbitrator.

4

In early June 2020, Burnap sent a letter to Palin and Chiprut. Burnap wrote, "[a]s you are all aware I must take your evaluation of the two market reports you presented to me and I cannot come up with my own evaluation of Fair Market Value . . . just make a determination of which offer is closer to market. [¶] The renewal paragraph in the Lease is very specific that I must pick one or the other." Burnap wrote that he toured the office space prior to writing the letter, reviewed "both parties' perspectives from Tenant's and Landlord's brokers and reviewed comps included in those reports, as well as comps from outside medical brokers." Burnap said both evaluations presented to him "were persuasive, however, if I were to put a [fair market value] on this location, I could not support either findings." After identifying certain buildings he did not consider comparable, he wrote, "I believe Tenant's FMV is low and the Landlord's FMV is high, however, the Landlord's FMV is closer to FMV than the Tenant's was for that particular suite. Therefore, I have to accept the evaluation" of Chiprut. The letter did not bear Burnap's signature.

C.    *The Complaint*

Raschkovsky filed a complaint for declaratory relief in February 2021 alleging the procedures for determining market rent outlined in the lease were not properly followed. Specifically, Raschkovsky asserted Burnap did not consider the Article 31(b) factors as required, made his own report instead, and only explained what he excluded from his consideration (not what he included). Raschkovsky also complained that a majority of the three arbitrators did not reach a decision on the issue(s) to be determined. Raschkovsky accordingly sought "a judicial

determination of whether the arbitration procedure for the determination of the Market Rent for the Premises during the Option Term complied with the procedure called for in Article 31(d) of the Lease."

Delphi answered the complaint with a general denial and assertion of affirmative defenses. In February 2022, Raschkovsky filed a response to a petition to confirm arbitration award, but it appears no such petition was ever filed.

### D.     The Motion for Judgment on the Pleadings
#### 1.     The parties' arguments

In November 2022, Delphi filed a motion for judgment on the pleadings. Delphi argued Raschkovsky's complaint was an improper attack on the arbitration award. Delphi asserted Raschkovsky should have filed a petition to vacate the award, not a complaint for declaratory relief.[1]

Raschkovsky opposed the motion, arguing it sufficiently pled a cause of action for declaratory relief and there was in fact no arbitration award it could have sought to vacate or correct. On the latter point, Raschkovsky argued the procedure the parties engaged in was an arbitration in name only, Burnap's unsigned letter was not an arbitration award, and it could not be an arbitration award because Delphi never filed a petition to confirm it. Raschkovsky argued that if the court found it had not

---

[1]     Delphi further contended Raschkovsky's complaint did not seek to set aside the award for any of the reasons enumerated in section 1286.2 and the grounds for relief were not authorized by that section.

6

adequately pled a claim for relief, it should be granted leave to amend.[2]

## 2. *The hearing and ruling*

The record does not include a transcript of the trial court hearing on the motion for judgment on the pleadings, but it does include a settled statement. According to that statement, Raschkovsky argued that in order to proceed within the framework of the California Arbitration Act and move to vacate an award, the award must be in writing and signed by the arbitrators, but Burnap's June 2020 letter, which he emailed to the other arbitrators, was not signed. Raschkovsky further argued Burnap's signature alone would not have been sufficient because the lease requires a majority of the arbitrators to make a decision. As a result, Raschkovsky contended it could not move to vacate the award.

The trial court asked Delphi if it had ever tried to confirm the award, pointing out that there was a response to a petition to confirm arbitration in the record but no petition on file. Delphi represented the court had refused to accept its petition for filing. The trial court said the proper procedural step would then have been to move to compel arbitration. It also stated that if Delphi had filed a petition to confirm arbitration, it could not have granted the petition if the award was unsigned. The court further explained that it considered the arbitration to be ongoing and incomplete until a signed award was served on

---

[2] There had been no previous challenges to the pleading.

7

Raschkovsky—and in the court's opinion there had not been such an award.

Following the hearing, the trial court issued a ruling in Delphi's favor. The court reasoned that resolution of any disagreement over the procedure for the determination of "Market Rent" was governed solely by the parties' arbitration agreement and was subject to review and enforcement by the court only under the California Arbitration Act. The court stated that, fundamentally, Raschkovsky was seeking to attack the validity of the arbitration and its outcome, and Raschkovsky's claim for declaratory relief was effectively a request to vacate or review a potential arbitration award. The judicial determinations Raschkovsky was requesting, including a decision as to whether Burnap's opinion even qualified as an arbitration award capable of vacatur or confirmation, were findings the court would have to make in connection with either a motion to confirm an arbitration award or a motion to vacate an arbitration award. The court stated the California Arbitration Act provides an exclusive, appropriate, effective statutory procedure for the resolution of the dispute, and granted the motion for judgment on the pleadings without leave to amend.

E.      The Motion for Attorney Fees

Delphi filed a motion for attorney fees based on the attorney fees clause in the lease and pursuant to Civil Code section 1717, arguing it was the prevailing party in the action. Delphi sought recompense for 124.60 hours expended on the action, for a total of $54,933.00.

Raschkovsky filed evidentiary objections to portions of the supporting declaration filed by Delphi and an opposition to the motion.

The trial court awarded attorney fees as requested by Delphi. The court concluded Delphi obtained an unqualified victory in the litigation, Delphi was accordingly the prevailing party under section 1717 as a matter of law, and the court lacked discretion to decide otherwise. The court also overruled Raschkovsky's objections and determined the amount of requested fees was reasonable.

## II. DISCUSSION

Though Raschkovsky contends otherwise, we conclude the procedure employed by the parties does qualify as an arbitration, as the trial court effectively found when concluding Raschkovsky's declaratory relief claim was infirm. That means there was no error in withholding relief on the sole claim for declaratory relief. It was error, however, to grant judgment on the pleadings without leave to amend. The trial court identified no factual defect with the pleading, only a legal one that is rather obviously remedied. Because Raschkovsky can restyle the pleading (even on just the facts already alleged) to seek vacatur of the Market Rent award under the California Arbitration Act (i.e., the procedure the trial court found Raschkovsky should have employed), it was an abuse of discretion not to give Raschkovsky that opportunity before dismissing the lawsuit. Because we so hold, and reverse and remand for further proceedings, we also necessarily vacate the trial court's subsequent award of attorney fees.

9

*A.* *The Court's Rationale for Granting Judgment on the Pleadings Is Not Erroneous*

*1.* *Standard of review*

Generally, ""[t]he standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer:  We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein . . . . We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory.'" [Citation.]" (*Tarin v. Lind* (2020) 47 Cal.App.5th 395, 403-404.) Additionally, "where the issue is one of statutory construction or contract interpretation, and the evidence is not in dispute, the de novo standard of review applies [citation]." (*People v. International Fidelity Ins. Co.* (2010) 185 Cal.App.4th 1391, 1395.)

Precedent holds, however, that this general standard of review can be different in cases pleading declaratory relief claims in light of the "discretion built into the statutory provisions authorizing courts to hear cases brought solely for declaratory relief." (*Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 364-365; see also Code Civ. Proc.,[3] § 1061 [a trial court "may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances"]; *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 [section 1060, the statute authorizing declaratory relief,

---

[3]    Undesignated statutory references that follow are to the Code of Civil Procedure.

"must be read together with section 1061"].)  Delphi argues this abuse of discretion standard should apply here but Raschkovsky maintains the standard of review is de novo.  The disagreement does not matter in this case because we would reach the same result under either standard of review.

> 2.     *The market rent procedure was an agreement to arbitrate*

To determine whether the trial court erred in granting the motion, we must first determine whether the lease includes an agreement to arbitrate.

"Arbitration is not defined in any statute."  (*Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 268.)  "[A]rbitration can take many procedural forms," but it requires "a third party decision maker, a final and binding decision, and a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision."  (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 687-688.)  "The fact that a procedure is labeled as "arbitration" does not mean that it is . . . and a procedure may constitute arbitration even though it does not bear that characterization."  (*Elliott & Ten Eyck P'ship v. City of Long Beach* (1997) 57 Cal.App.4th 495, 503.)  The California Arbitration Act provides examples of the types of "[a]greement[s]" that fall within the scope of an agreement to arbitrate, which "include[], but [are]not limited to, agreements providing for valuations, appraisals, and similar proceedings . . . ."  (§ 1280, subd. (a).)

The procedure set out in the lease for the determination of market rent where the parties could not agree upon an amount is expressly termed an "arbitration."  Each party is to appoint one

11

"arbitrator" with specified qualifications, after which the two arbitrators, together, appoint a third arbitrator who is qualified under the same criteria. "The determination of the arbitrators [is] limited solely to the issue of whether [Delphi's] or [Raschovsky's] submitted Market Rent is the closest to the actual Market Rent as determined by the arbitrators . . . ." The decision of the three arbitrators (or a majority thereof) is binding.

This procedure meets the requirements for an arbitration under California law. It is expressly an arbitration, and incudes core aspects of an arbitration: a third party decision maker, a final and binding decision, and a mechanism to ensure a "'minimum level of impartiality'" (the requirement that the party-appointed arbitrators appoint the third arbitrator). (*Saeta, supra,* 117 Cal.App.4th at 268.) That the parties agreed to a procedure with these attributes, which they chose to describe as an arbitration, demonstrates they intended to agree to arbitrate under California law.

Raschkovsky, however, asserts the trial court erred in interpreting the procedures in the lease as an agreement to arbitrate rather than a "mere agreement for a binding valuation." It argues this case is akin to *Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, in which the court concluded, on demurrer, that an agreement to submit to a binding valuation via an audit was not per se an agreement to submit to arbitration. But in *Coopers*, the court concluded the language of the relevant agreement was "at least ambiguous with respect to whether the agreement is for a formal arbitration within the ambit of the code, or for a mere binding audit," and, due to the ambiguity and standard of review, it was required to "accept as correct [the plaintiff's] allegation as to the meaning of the

12

agreement . . . namely, that it simply provided for an audit." (*Id.* at 538.) The operative complaint here does not include any similar allegation that the parties' agreement was something other than what the agreement itself says it was, i.e., an arbitration.

### 3. *Declining to grant declaratory relief was not error*

Our Supreme Court has explained, "[e]ven if the trial court possesses subject matter jurisdiction in a declaratory relief action filed pursuant to Code of Civil Procedure section 1060 . . . the court properly may refuse to grant relief where an appropriate procedure has been provided by special statute and the court believes that more effective relief can and should be obtained through that procedure." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 433.)

The California Arbitration Act provides such a procedure. Sections 1286.4 and 1286.8, which address the prerequisites to vacating and correcting an arbitration award (respectively), both provide a court may neither vacate nor correct an award unless, among other things, "[a] petition or response requesting that the award be" vacated or corrected "has been duly served and filed . . . ." (§§ 1286.4, subd. (a); 1286.8, subd. (a).) Section 1286.2 outlines the grounds for vacating an award, including where the "arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision . . . ." (§ 1286.2, subd. (a)(4).) And section 1286.6 outlines the grounds for correcting an award, including where it "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision" and where "[t]he award is

13

imperfect in a matter of form, not affecting the merits of the controversy." (§ 1286.6, subds. (b), (c).) Further, it is well settled that, "[w]hen the parties have agreed to resolve their dispute by arbitration, the court is required to 'confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding.' [Citation.]" (*Plantations at Haywood 1, LLC v. Plantations at Haywood, LLC* (2025) 108 Cal.App.5th 803, 810-811.)

Because the California Arbitration Act provides an "exclusive, appropriate, and effective statutory procedure" for resolving the parties' dispute, the trial court did not err in denying declaratory relief.

Raschkovsky, however, believes the trial court erred because Raschkovsky could not avail itself of the California Arbitration Act procedure for challenging an arbitration award. Burnap's letter was not signed, and according to Raschkovsky, that means it is not an arbitration award that is subject to challenge on the grounds specified in the California Arbitration Act. Raschkovsky is correct that the California Arbitration Act provides an arbitration award "shall be in writing and signed by the arbitrators concurring therein." (§ 1283.4.) But Raschkovsky is wrong in asserting the absence of a signature on the letter means the arbitration award was not an arbitration award; at most, the lack of a signature is a defect—separate from the merits—that can be raised as an argument for correcting the award.[4]

---

[4] Raschkovsky's suggestion that Burnap's letter is not an arbitration award because an award must "include a

14

Raschkovsky also takes issue with the more fundamental proposition that declaratory relief can be withheld where another appropriate procedure is provided by special statute. Raschkovsky believes the California Arbitration Act does not have an appropriate procedure precluding declaratory relief, but this is belied by the act itself, which provides procedures for compelling arbitration, as well as for correcting and vacating arbitration awards.  In the same vein, Raschkovsky cites *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, where the court of appeal concluded the plaintiff was not required to engage in a statutory appraisal prior to seeking declaratory relief because the relevant statutory insurance appraisal procedures expressly did not limit recourse to other remedies.  (*Id.* at 1096.) The circumstances here are, of course, different.  The California Arbitration Act includes no statute, like the statute in *Doan*, that permits recourse to other remedies in addition to its procedures for vacating, correcting, and confirming arbitration awards. Furthermore, Raschkovsky's complaint here seeks to attack the validity of an arbitration already conducted, which is not analogous to the appraisal scenario in *Doan* where the statutory appraisal was not first completed.

---

determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy" (§ 1283.4) fails for a similar reason.  That may be grounds for challenging the award (an issue on which we express no view), but it does not establish the award is not an award.

15

### 4. *Leave to amend should have been granted*

"[I]t is an abuse of discretion to grant a motion for judgment on the pleadings without leave to amend "'if there is any reasonable possibility that the plaintiff can state a good cause of action.'" [Citation.]" (*Dudley v. Department of Transp.* (2001) 90 Cal.App.4th 255, 260.) "Ordinarily, an appellant who seeks leave to amend attempts to show that the trial court's denial of leave to amend was error by showing on appeal what facts could be pleaded to cure defects in the complaint and how they state a cause of action. [Citation.] But for an original complaint, regardless [of] whether the plaintiff has requested leave to amend, it has long been the rule that a trial court's denial of leave to amend constitutes an abuse of discretion unless the complaint 'shows on its face that it is incapable of amendment.' [Citations.]"[5] (*Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411.)

In its opening brief, Raschkovsky suggests, among other things, that if granted leave to amend it could raise "the issue that Burnap exceeded his powers set forth in Article 31(d)" of the lease, thus requiring vacatur under section 1286.2, subdivision (a)(4). Section 1286.2 provides a trial court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).)

---

[5]     A request for leave to amend may also be made for the first time on appeal (*Eghtesad*, *supra*, at 411), and a plaintiff is permitted to propose new theories to show how the complaint may be amended (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460, 462).

16

"'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may . . . be corrected or vacated by the court.'" (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185.) Raschkovsky specifically asserts Burnap exceeded his powers by unilaterally deciding Delphi's market rent analysis was closer to the actual market rent.

We have concluded the trial court did not err in deciding a claim for declaratory relief was not the appropriate vehicle for Raschkovsky to seek the relief at the heart of its complaint, but this same rationale highlights why it was error to deny leave to amend: the only identified defect in the pleading was the legal theory asserted, and the trial court conceded there was a viable alternative legal theory. Indeed, that alternative theory, an attack on the arbitration award under the provisions of the California Arbitration Act, can be alleged even on the complaint's existing factual allegations. That the pleading was labeled a "complaint" rather than a "petition" was immaterial (cf. Shakespeare, Romeo and Juliet, act II, scene 2, line 46 ["What's in a name"]) and, in any event, easily remedied. Because the complaint showed on its face that it *was* capable of amendment, leave to amend should have been granted.

B. *The Attorney Fees Award Must Be Reversed*

Because we reverse the underlying judgment, Delphi is no longer necessarily the prevailing party in this action entitled to attorney fees. (See *Gilman v. Dalby* (2009) 176 Cal.App.4th 606, 620.) The award of attorney fees and costs to Delphi must therefore be reversed.

17

## DISPOSITION

The judgment and post-judgment award of attorney fees are reversed and the cause is remanded for entry of a new and different order granting the motion for judgment on the pleadings with leave to amend to seek vacatur of the arbitration award (after, if necessary, correction of the lack of a signature) or other relief authorized by the California Arbitration Act.  Raschkovsky is awarded its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


HOFFSTADT, P. J.


MOOR, J.